UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUISELA AGUIRRE GUERRA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DEMATIC CORP, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:18-CV-0376-LRH-CLB<br><br>ORDER |

Before the court is Plaintiff Guisela Aguirre Guerra's ("Aguirre") objection (ECF No. 74) to Magistrate Judge Carla Baldwin's order (ECF No. 73) denying plaintiff's motion for leave to file a second amended complaint. Defendant Dematic Corporation ("Dematic") has filed a response to Aguirre's objection (ECF No. 75). For the reasons stated below, the Court overrules Aguirre's objection and affirms Judge Baldwin's order.

**I.　　BACKGROUND**

On June 11, 2018, Aguirre filed a complaint against Dematic in state court alleging that it was negligent and strictly liable for an injury Aguirre suffered while working at Sally Beauty Supply, LLC ("Sally Beauty"). ECF No. 1-1. Aguirre alleges a lift gate manufactured and installed by Dematic injured Aguirre in 2016. ECF No. 1 at 5–6. Dematic removed the case to federal court pursuant to 28 U.S.C. § 1441. ECF No. 1. After some discovery, the parties stipulated to amend the complaint to add as defendant Rapistan Demag ("Rapistan)—Dematic's

predecessor and the company that installed the lift gate.[1] ECF No. 14. Later, Aguirre maintains that after additional discovery, she uncovered further information that gave rise to a second amended complaint. ECF No. 68.

Specifically, Aguirre's proposed second amended complaint ("SAC") alleges Rapistan misrepresented the amount of force needed to lift the gate when sold to Sally Beauty in 1999—thereby violating the Nevada Deceptive Trade Practices Act ("NDTPA"). ECF No. 68-1. While Rapistan represented that the lift gate would take "less than 40 pounds of force to lift[,]" (ECF No. 68-1 at 4) Aguirre alleges the amount of force required is actually "over 55 pounds[.]" *Id.* Because of this misrepresentation—according to Aguirre—she injured herself while lifting the gate. ECF. No 68-1 at 3. After observing that "the law requires the claimant to allege reliance on [a] misrepresentation," Judge Baldwin found that the claim failed to allege any facts which indicated Aguirre actually relied on the misrepresentation concerning the lift gate. ECF No. 73 at 6. Accordingly, Judge Baldwin ruled that the motion for leave to file a SAC must be denied. *Id.*

Judge Baldwin's order and Aguirre's subsequent objection are the subject of this appeal.

## II. LEGAL STANDARD

A magistrate judge may decide non-dispositive pretrial matters. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The magistrate judge's order generally operates as a final determination. LR IB 1–3. But if a party timely objects to the magistrate judge's order, a district court judge must review the order and "set aside any part […] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); LR IB 3–1(a). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 950 (9th Cir. 2013) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1110-11 (E.D. Cal. 2011) (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)). However, in reviewing the order, the court applies the deferential

---

[1] For the purposes of this order, the Defendant will be referred to as Rapistan because it is Rapistan's conduct which is at issue.

2

abuse-of-discretion standard; the magistrate judge's order will be reversed only if the magistrate judge abused her broad discretion. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007); *see also Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (holding a judge abuses her discretion only when her decision is contrary to law or clear error based on the evidence).

### III. DISCUSSION

After reviewing Aguirre's objections, the parties' filings, and the relevant case law, the Court is satisfied that Magistrate Judge Baldwin's order is neither clearly erroneous nor contrary to law.

The NDTPA provides a right of action to individuals who are "victim[s] of consumer fraud." NRD 41.600(1). The Nevada Supreme Court has not defined the elements of a claim under the NDTPA. So, as Judge Baldwin correctly identified, when state law is unclear and the highest court of the state has not ruled on the issue, federal courts are tasked with predicting how the court might decide the issue. *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1045–46 (9th Cir. 2001). Federal courts can look to intermediate appellate court decisions, statutes, and "well-reasoned decisions" from other jurisdictions for guidance. *Takahashi v. Looms Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980); *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). Since the Nevada Supreme Court has not defined the elements of a claim under the NDTPA, Judge Baldwin turned to another federal court decision which did—*Picus v. Wal-Mart Stores Inc.* 256 F.R.D. 651 (2009). There the court found, after reviewing numerous other states' deceptive trade statutes, that the NDTPA requires a plaintiff to prove "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Id.* at 658. Additionally, the causation element includes reliance. *Id.* In other words, the defendant must have relied on the alleged misrepresentation in order to state a claim under the NDTPA. Lastly, Judge Baldwin observed that the plaintiff must suffer a direct harm from the alleged misrepresentation—meaning the deception and injury cannot be too attenuated. ECF No. 73 at 5 (citing *Del Webb Cmtys, Inc. v. Partington*, 652 F.3d 1145, 1152 (9th Cir. 2011)).

Working with these previously agreed upon understandings of the NDTPA, Judge Baldwin denied the motion to leave to file a second amended complaint. ECF No. 73. Aside from finding no facts which suggested Aguirre relied on the alleged misrepresentations made by Rapistan, Judge Baldwin also noted Aguirre's injury occurred 17 years after Rapistan made the misrepresentation. *Id.* In the Judge's mind, "[the] alleged harm [was] only tangentially related to the words in an information brochure provided to [Aguirre's] employer 17 years before the injury." *Id.* Still, Aguirre asserts that the NDTPA does not require actual reliance on a misrepresentation in each case, and she was still "directly harmed" by Rapistan's misrepresentation despite the length of time between the deception and injury. ECF No. 74. The Court disagrees and is satisfied with Judge Baldwin's understanding and application of the NDTPA.

First, Judge Baldwin correctly utilized the decision in *Picus* to identify the elements of a claim under the NDTPA—including reliance. *Picus* involved members of a class alleging that they were harmed by a pet food label which deceived them into believing the food was "Made in the USA." *Id.* at 659. The court in *Picus* denied certifying the class because it determined claims under the NDTPA required a showing of reliance, and it was unreasonable to assume that all of the class members relied on the misrepresentation contained on the label when they purchased the pet food. *Id.* Nevertheless, Aguirre argues that the present case is distinguishable. According to Aguirre, her injury is not dependent upon her having relied on Rapistan's alleged misrepresentation concerning the force required to lift the gate. ECF No. 74. While true her alleged physical injury is not dependent on the misrepresentation, the same cannot be said for an injury under the NDTPA. As Judge Baldwin pointed out, "[w]ithout [Aguirre] knowing what Rapistan claimed the weight of the gate to be, she cannot be a victim of the misrepresentation." ECF No. 73 at 6.

Second, Aguirre fails to identify how she was directly harmed by the misrepresentation. *See Del Webb*, 652 F.3d at 1155. Aguirre argues that she was "directly harmed" because "the 'excessive forces' (more than the forces advertised by [Rapistan]) directly injured her arm when she lifted the Gate." ECF No. 74 at 4. However, again, without any knowledge of Rapistan's

4

misrepresentations, there is no minimal casual connection between the deceptive trade practice and her injury. Aguirre could not have been directly harmed by an alleged misrepresentation if it occurred 17 years before her employment, and she was not aware of it when lifting the gate.

Thus, given this record, the Court finds that Judge Baldwin properly denied Aguirre's motion for leave to file a second amended complaint. No part of this ruling is contrary to law or clearly erroneous. Accordingly, the Court overrules Aguirre's objections and affirms Judge Baldwin's ruling.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Aguirre's motion (ECF No. 74) is **DENIED**.

IT IS SO ORDERED.

DATED this 8th day of Oct, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE