UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUISELA AGUIRRE GUERRA,<br><br>Plaintiff,<br><br>v.<br><br>DEMATIC CORP., a Delaware Corporation; et al.,<br><br>Defendants. | Case No. 3:18-cv-00376-LRH-CBC<br><br>ORDER |
| DEMATIC CORP., a Delaware Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>SALLY BEAUTY SUPPLY, LLC F/K/A SALLY BEAUTY COMPANY, INC.,<br><br>Third-Party Defendant. | |

Before the Court is Defendant/Third-Party Plaintiff Dematic Corp.'s ("Dematic") Motion for Summary Judgment (ECF No. 137), supported by a "Separate Statement of Undisputed Material Facts" (ECF No. 138). Plaintiff Guisela Aguirre Guerra ("Aguirre") opposed Dematic's motion (ECF No. 146) and Dematic replied to the opposition (ECF No. 152). Also before the Court is Third-Party Defendant Sally Beauty Supply, LLC's ("Sally Beauty"), Motion for Summary Judgment. ECF No. 136. Both Aguirre and Dematic opposed Sally Beauty's motion (ECF Nos. 145, 147) and Sally Beauty replied to the oppositions (ECF Nos. 154, 155). Dematic and Sally

1

Beauty requested oral argument on their respective motions. The Court granted the requests and heard oral argument on February 9, 2023. For the reasons articulated below, the Court denies Dematic and Sally Beauty's motions.

## I.  BACKGROUND

This is a personal injury lawsuit arising out of an employee's warehouse injury. On June 11, 2018, Aguirre filed a state court complaint against Dematic alleging that it negligently caused, and is strictly liable for, an injury Aguirre sustained while working for Sally Beauty. ECF No. 1-1 at 4–7. Specifically, Aguirre alleged that a conveyor belt lift gate (the "Gate")—manufactured by Dematic's predecessor—injured her right arm when she lifted it in the scope of her employment. *Id*. at 5–6. Dematic subcontracted with third parties to install the Gate at Sally Beauty's warehouse. ECF No.146-17 at 4. On August 8, 2018, Dematic removed the case pursuant to 28 U.S.C. § 1332(a) and 1441(a). *See generally*, ECF No. 1. After, Aguirre filed an amended complaint in which she alleges strict product liability because Dematic defectively designed the Gate, failed to warn of the Gate's possible risks, and failed to provide instructions for users on how to operate the Gate in a manner that would avoid injury.[1] ECF No. 16 at 3–4. These allegations also provide the basis for Aguirre's negligence claim against Dematic. *Id*. at 4. On January 24, 2019, Dematic filed a third-party complaint against Sally Beauty alleging that, based on the express indemnity provision contained in the Gate's installation contract, Sally Beauty is liable for Aguirre's injuries. ECF No. 19 at 2–4. Dematic and Sally Beauty's respective motions for summary judgment followed the close of discovery. These motions are addressed below.

## II.  LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence and all reasonably drawn inferences must be read in the light most favorable to the

---

[1] Aguirre's amended complaint names Rapistan Demag Corp. ("Rapistan"), as Dematic's predecessor. *See* ECF No. 16 at 2. Here, all parties agree that Rapistan is Dematic's predecessor. *See* ECF No. 137 at 3, n. 2; *see also* ECF No. 155 at 3, n. 2. In this Order, the Court refers only to Dematic for clarity except when quoting from the Gate installation contract.

nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 987, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On those issues for which it bears the burden of proof, the moving party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.*

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See id.* at 252.

### III. DISCUSSION

#### A. Dematic's Motion for Summary Judgment

Dematic argues that it is entitled to summary judgment for two reasons. First, Dematic alleges that there is no competent evidence to support Aguirre's liability theories. ECF No. 137 at 3. In opposition, Aguirre argues that Dematic has ignored evidence establishing manufacturing and design defects and disregarded its own failure to provide user instructions for the Gate. ECF No. 146 at 2. In reply, Dematic alleges that Aguirre: (1) has not set forth admissible evidence that a manufacturing defect exists, (2) sets forth the wrong type of evidence to show a design defect, and (3) fails to acknowledge that Dematic gave Sally Beauty the Service Manual, but Sally Beauty failed to train its employees on how to use the Gate. ECF No. 152 at 5–6.

Second, Dematic alleges that Sally Beauty substantially modified the Gate after it was installed, and the modification caused Aguirre's injury. ECF No. 137 at 3. Dematic claims that the installed Gate was comprised of two parallel adjacent gates that users had to lift independently in order to pass from aisle-to-aisle. *Id*. at 12. Dematic further alleges that Sally Beauty accepted installation of the two parallel gates, but later made them "twice as heavy" by welding them together and forming the singular Gate at issue. *Id*. at 13. According to Dematic, Sally Beauty's welding was the substantial modification that proximately caused Aguirre's injury because Aguirre expressly claims that she was injured due to the Gate being too heavy. *Id*. at 14.

In opposition, Aguirre claims that summary judgment is improper because disputed issues of material fact exist as to whether Sally Beauty substantially modified the Gate. ECF No. 146 at 2, 13. Aguirre alleges that Dematic installed two gates that were bolted together, and that Sally Beauty had no alternative but to weld the gates because the bolts Dematic installed kept coming loose. *Id*. at 14–15. Thus, Aguirre specifically argues that there is a genuine dispute as to whether Sally Beauty substantially modified the Gate by welding it when it was already bolted by Dematic. *Id*. at 15. In reply to Aguirre's opposition, Dematic argues that Aguirre misinterprets evidence as to who originally bolted the gates, and claims that there is "plenty of evidence that Sally [Beauty] modified the gate after Dematic's installation." ECF No. 152 at 4.

In Nevada, "a plaintiff must establish three elements to show strict liability: '(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury.'" *Prall v. Ford Motor Co.*, Case No. 2-14-CV-001313-MMD-GWF, 2017 WL 361545, at *5 (D. Nev. Jan. 24, 2017) (citing *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992)). The Nevada Supreme Court has recognized manufacturing defects, design defects, and failure to warn as viable theories of strict liability tort claims. *Resoso v. Clausing Indus., Inc.*, Case No. 2-14-CV-00102-RFB-GWF, 2018 WL 3822462, at *3 (D. Nev. Aug. 10, 2018) (citation omitted). "'[G]enerally, a substantial alteration [to a product] will shield a manufacturer from liability for injury that results from that alteration.'" *Resoso*, 2018 WL 3822462, at *4 (quoting *Robinson v. G.G.C., Inc.*, 808 P.2d 522, 525 (Nev. 1991)).

Here, there is a genuine dispute as to whether Sally Beauty's welding of the Gate constitutes a substantial alteration or modification the Gate because whether Dematic installed a bolted or unbolted Gate is entirely unclear. When "reasonable minds could differ on the material facts at issue […] summary judgment is not appropriate[.]" *See Prall*, 2017 WL 361545, at *4 (quotation omitted); *see also*, *Durang*, 711 F.2d at 143. While the Court agrees that evidence in the record supports Dematic's argument that it did not install a bolted Gate, evidence also supports Aguirre's argument that the Gate Dematic installed was bolted.[2] First, Tap Chung—the Facilities Maintenance Manager at Sally Beauty in 1999—claimed that he was present during the Gate's installation and noticed that it was bolted soon after the Gate went live. ECF No. 146-18 at 4. Tap Chung also testified that he had to weld the Gate together because the installed bolts kept coming loose. *Id*. at 5. Moreover, in the Rule 30(b)(6) deposition of Dematic, Michael McGettigan stated that he had no knowledge of how the Gate was installed including whether it was bolted or not. ECF No 146-15 at 14.

In assessing Dematic's motion for summary judgment, the Court must view the evidence in a light most favorable to Aguirre. Aguirre has produced evidence that raises genuine issue for trial as to whether Dematic originally installed a bolted Gate, and by extension, whether Sally Beauty's subsequent welding would constitute a substantial modification to the bolted Gate as opposed to an unbolted one. Based on the evidence before the Court, this is a genuine issue for trial that must be decided by the factfinder. For these reasons, the Court denies Dematic's motion for summary judgment.

### B. Sally Beauty's Motion for Summary Judgment

In its Third-Party Complaint, Dematic alleges that Sally Beauty modified or removed a safety feature of the Gate and triggered the express indemnity provision of the parties' Gate installation contract which relieved Dematic of liability for Aguirre's injury. *See generally*, ECF No. 19. The contract's indemnification provision reads:

---

[2] Evidence supporting Dematic's argument includes Tap Chung's testimony that he noticed the Gate was bolted together six months post-installation (ECF No. 152 at 3 (citing ECF No. 147-3 at 6)), and the Rule 30(b)(6) deposition of Dematic, in which Michael McGettigan stated that if the gates were intended to be bolted together at installation, notes instructing the installer to bolt or modify the gates would have been included on the installation drawings, but no such notes were present (ECF No. 155-1 at 13–15).

> This equipment furnished hereunder will be manufactured with Rapistan Demag safety features and furnished user safety instructions. The operation of the equipment with safety features removed or modified and/or the disregard of the user safety instructions is outside of Rapistan Demag's control and is the responsibility of the Purchaser. Therefore, Purchaser agrees to indemnify and hold Rapistan Demag harmless from any and all claims, demands, liabilities, causes of action, suits, costs, and expenses of any kind or nature (including attorney's fees) for loss or damage which may be suffered by Rapistan Demag as a result of injury to persons arising from such *removal or modification to Rapistan Demag-furnished safety features and/or disregard of Rapistan Demag furnished user safety instructions*, including any person injured while riding, sitting, stepping, walking, or climbing on the equipment furnished hereunder.

ECF No. 136-1 at 95 (emphasis added).

In its motion for summary judgment, Sally Beauty argues that the express indemnity provision was not triggered because it never modified or removed a safety feature of the Gate. ECF No. 136 at 8. In opposition, Dematic alleges that (1) Sally Beauty modified a safety feature of the Gate altered the two gates into one double heavy Gate, or (2) removed a safety feature of the Gate when it removed the Gate's safety latch. ECF No. 147 at 8, 9. As to Dematic's modification argument, Sally Beauty alleges that welding cannot trigger the express indemnity clause because Dematic originally bolted the Gate. ECF No. 155 at 15. Sally Beauty also argues that neither bolting nor welding constitutes a modification of the Gate's safety features. *Id*. at 16. As to Dematic's removal argument, Sally Beauty claims that Dematic has no evidence that a safety latch was ever installed, nor that Sally Beauty ever removed it. *Id*. at 18–20.

Moreover, in its reply, Sally Beauty argues that Dematic has failed to carry its burden of producing affirmative and competent evidence demonstrating that Sally Beauty modified or removed a safety feature of the Gate. *Id.* at 3. According to Sally Beauty, its burden at the summary judgment stage is not to affirmatively prove that it did not modify or remove a safety feature of the Gate, but rather that there is an absence of evidence establishing a genuine issue of material fact. *Id*. at 4.

At the summary judgment stage, the nonmoving party can meet its burden by one of two ways:

///

///

>  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.

*Las Vegas Tribe of Paiute Indians v. Phebus*, 5 F. Supp. 3d 1221, 1227 (D. Nev. Mar. 24, 2014) (citing *Celotex Corp.*, 477 U.S. at 323–24). Summary judgment cannot be avoided by the nonmoving party where only "conclusory allegations unsupported by facts" are offered. *Id*. The language of Fed. R. Civ. P. 56 requires that the nonmoving party must offer "specific facts" showing that there is a genuine issue for trial. *Matushita*, 475 U.S. at 587. Here, Sally Beauty is correct that much of the evidence Dematic offered establishing genuine issue of material fact is conclusory and unsupported by facts. For example, Dematic concludes that a safety latch must have been installed and subsequently removed by Sally Beauty because the part had been included on a product list and because the installation contract called for Dematic to install it. ECF No. 147 at 9. Neither supporting fact offered by Dematic is significantly probative of whether the safety latch was actually installed, and certainly not probative as to whether Sally Beauty removed it.

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party" there is no genuine issue for trial. *Resoso*, 2018 WL 3822462, at *1. Here, the record taken as a whole could lead a rational trier of fact to find for Dematic. Dematic has produced evidence that establishes a genuine issue as to whether Sally Beauty modified a safety feature of the Gate. Sally Beauty has stated that it internally decided to modify the Gate via welding (ECF No. 147-7 at 5) and Tap Chung also stated that he removed a handle from the side of the Gate and relocated it on top of the Gate (ECF No. 147-3 at 13).

At summary judgment, the Court's duty is not to decide facts. *See Liberty Lobby*, 477 U.S. at 249 ("the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Here, the Court is not tasked with deciding whether Sally Beauty's acts of welding the Gate or relocation of the Gate's handle constitute modifications of the Gate's safety features. Rather, the Court's duty is to determine whether the record could lead a reasonable factfinder to conclude that Sally Beauty's modifications could be considered as such. The Court answers this question in the affirmative. It is up to the jury

to determine whether Sally Beauty's modifications constitute "safety feature" modifications. Based on the evidence in the record, a rational trier of fact could find that Sally Beauty modified a safety feature of the Gate. For example, welding two separate gates into one large Gate could make it heavier to lift while relocating the Gate's handle could make it more dangerous and difficult to operate. Together, or separately, these facts could reasonably support a finding that Sally Beauty's admitted modifications are safety feature ones.

Additionally, there is a dispute as to whether the welded Gate responded to the same lifting effort as the unwelded Gate. When asked whether the weight of the combined gates having been bolted together would change by virtue of those gates being welded together, Dematic's expert Dale Fridley stated:

> Well, the -- the two gates separate from one another, if they were properly counterbalanced, meaning that if the springs were adjusted properly, they should, when bolted together, still respond to a total lift effort of less than 40 pounds. For instance, if you have both gates working at something less than 40 and you join them together, you still have -- you still have enough springs to counteract twice the weight. So another way to say it, is you've got twice the number of springs. But you've also got twice the weight, so you should have -- you should have the same -- roughly the same amount of effort required to lift the gate.

ECF No. 136-7 at 6–7. Basically, Fridley stated that if the Gate's springs were properly counterbalanced and adjusted before they were bolted, the Gate should respond to roughly the same lifting effort post-bolting. *Id*. Because it is unclear who bolted the Gate originally, it is unclear who was tasked with counterbalancing and adjusting the springs so that the bolted Gate responded to the same lifting effort as the unbolted one. *See* Dematic's motion for summary judgment discussion *supra* Section III.A. Ultimately, if there is a question as to whether the Gate responded to the same lifting effort after it was bolted, a question exists as to whether the Gate responded to the same lifting effort after it was welded. Both questions turn on whether the Gate's springs were properly counterbalanced and adjusted before it was bolted.

Dematic has produced evidence that raises questions as to whether Sally Beauty modified a safety feature of the Gate. Clearly then, whether the express indemnity provision of the parties' Gate installation contract was triggered remains in dispute. Accordingly, the Court denies Sally Beauty's motion for summary judgment.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Dematic's Motion for Summary Judgment (ECF No. 137) is **DENIED**.

IT IS FURTHER ORDERED that Sally Beauty's Motion for Summary Judgment (ECF No. 136) is **DENIED**.

IT IS SO ORDERED.

DATED this 3rd day of March, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE