# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUISELA AGUIRRE GUERRA,<br><br>          Plaintiff,<br><br> v.<br><br>DEMATIC CORP., a Delaware Corporation; et al.,<br><br>          Defendant.<br><br>DEMATIC CORP., a Delaware Corporation,<br><br>        Third-Party Plaintiff,<br><br> v.<br><br>SALLY BEAUTY SUPPLY, LLC F/K/A SALLY BEAUTY COMPANY, INC.,<br><br>       Third-Party Defendant. | Case No. 3:18-cv-00376-LRH-CBC<br><br>ORDER |

  Before the Court is Plaintiff Guisela Aguirre Guerra's ("Guerra") motion for reconsideration. ECF No. 167. Defendant/Third-Party Plaintiff Dematic Corp. ("Dematic") opposed the motion (ECF No. 170) and Guerra replied to the opposition (ECF No. 171). For the reasons articulated below, the Court denies Guerra's motion.

  This is a personal injury lawsuit arising out of an employee's warehouse injury. While working in Sally Beauty Supply, LLC's ("Sally Beauty") warehouse around June 15, 2016, Guerra injured her right arm when she was operating a conveyor belt lift gate (the "Gate"). ECF No. 1-1 at 5. On June 11, 2018, Guerra filed a complaint against Dematic, whose predecessor manufactured

and installed the Gate in Sally Beauty's warehouse, in the Second Judicial District Court of the State of Nevada in and for Washoe County. *Id*. at 4. On August 8, 2018, Dematic removed the matter pursuant to 28 U.S.C. §§ 1332 and 1441. ECF No. 1 at 1–2. On January 22, 2019, Guerra filed an amended complaint alleging negligence and strict product liability because Dematic (1) defectively designed the Gate, (2) failed to warn of the Gate's possible risks, and (3) failed to provide instructions for users on how to operate the Gate in a manner that would avoid injury. ECF No. 16 at 3–4. On January 24, 2019, Dematic filed a third-party complaint against Sally Beauty alleging that it is responsible for Guerra's injury because it made modifications to the Gate's safety features in violation of an express indemnity provision contained in their 1999 Gate installation agreement. *See generally,* ECF No. 19.

After some initial discovery, Guerra motioned for leave to file a second amended complaint in order to add a Nevada Deceptive Trade Practice Act (the "NDTPA") claim under Nev. Rev. Stat. § 598.0915. *See generally*, ECF No. 68. The proposed NDTPA claim was based on Guerra's allegation that Dematic knowingly misrepresented the pounds of force needed to lift the Gate it installed at Sally Beauty's warehouse. ECF No. 68-1 at 5. Magistrate Judge Carla Baldwin denied the motion because, amongst other considerations, Guerra failed to allege any facts which indicated she knew of or relied on Dematic's misrepresentation. ECF No. 73 at 6. Guerra objected and appealed the decision. *See generally*, ECF No. 74. The Court denied Guerra's objection and affirmed Judge Baldwin's order on the grounds that the decision was neither clearly erroneous nor contrary to law. ECF No. 77 at 3. Now, Guerra argues that a recent Nevada Supreme Court decision provides proper grounds for the Court to reconsider its order affirming Judge Baldwin's finding. ECF No. 167 at 1.

Although the Federal Rules of Civil Procedure do not explicitly allow for an aggrieved party to seek reconsideration of a court's judgment, federal courts have typically construed such requests as falling under Rule 59(e) or 60(b). A district court may reconsider a prior order only where the court is presented with newly discovered evidence, an intervening change of controlling law, where the prior order was clearly erroneous, or where manifest injustice would result. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v.*

*AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Motions for reconsideration are "extraordinary remed[ies]," and they should only be used "sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Whether or not to grant reconsideration is within the sound discretion of the district court. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Guerra argues that the Court should reconsider its previous order because the Nevada Supreme Court recently clarified the NDTPA standing requirements in *R.J. Reynolds Tobacco Co. v. 8th Judicial District Court*, 514 P.3d 425 (2022). ECF No. 167 at 1. Under *R.J. Reynolds*, Guerra argues that there are two NDTPA standing requirements: (1) a deceptive trade practice, and (2) a victim who was harmed by the deceptive trade practice. *Id.* at 4. Guerra alleges that Dematic deceptively represented that its Gate met industry standards for pounds of force to lift and that Guerra relied on this misrepresentation to operate the Gate which proximately caused her arm injury. *Id.* at 7, 8. Regarding reconsideration, Guerra argues that the Court erred in its prior denial because the denial was premised on requiring Guerra to be aware of or rely on Dematic's deception. *Id.* at 6. Guerra argues that direct reliance is not a requirement under the NDTPA after *R.J. Reynolds* because the NDTPA does not incorporate common law fraud elements like direct reliance. *Id.* at 3. In opposition, Dematic argues that Guerra's motion is improper under LR 59-1 due to timing and argument repetition. ECF No. 170 at 3, 4. Dematic also argues that Guerra misinterprets *R.J. Reynolds* and alleges that no change in controlling law resulted from that decision. *Id.* at 2, 3. In reply, Guerra argues that the motion is proper and timely under LR 59-1, that *R.J. Reynolds* changes controlling law, and that "manifest injustice" and "delay" will result if the Court fails to reconsider its previous order. ECF No. 171 at 1, 2.

While *R.J. Reynolds* clarifies aspects of NDTPA standing, the Court finds that it does not change controlling law nor does it warrant an extraordinary remedy like reconsideration. *R.J. Reynolds* involved a plaintiff who smoked cigarettes for more than 50 years. 514 P.3d at 427. After the plaintiff developed laryngeal cancer, she filed suit against multiple cigarette manufacturing companies including Reynolds even though she had never purchased or smoked a Reynolds-

3

manufactured product. *Id*. The plaintiff brought fraud, civil conspiracy, and products-liability claims against the manufacturers as well as an NDTPA claim that alleged the manufacturers knowingly made false representations in their advertisements. *Id*. Reynolds filed a motion to dismiss the claims because the plaintiff never used a Reynolds-made product. *Id*. at 427–28. The Nevada Supreme Court found that the plaintiff had standing under the NDTPA notwithstanding the fact that she had never used a Reynolds product. *Id*. at 433. More specifically, the Nevada Supreme Court held that a victim under the NTDPA does not have to use the manufacturer's product to show direct harm by a deceptive trade practice. *Id*. ("a 'victim' is any person who can show he or she was directly harmed by consumer fraud" and "[w]hile [the plaintiff] did not use Reynolds' product, she pleaded that she would not have smoked tobacco and, consequently, would not have suffered cancer, but for the deceptive trade practices engaged in by Reynolds and the other tobacco companies.").

Although *R.J. Reynolds* distinguishes common law fraud from the NDTPA, the Court is not persuaded by Guerra's argument that reliance and reliance-like reasoning is eliminated from standing considerations. In *R.J. Reynolds*, the Nevada Supreme Court repeatedly reasoned that the plaintiff showed direct harm by pleading that she relied on the manufacturers' misrepresentations to smoke generally and would not have smoked but for those misrepresentations. *Id*. at 431–32 ("[Plaintiff] also alleged that [she] was directly harmed because [she] relied on those representations to smoke generally," and "[plaintiff] pleaded sufficient facts of a direct harm as [she] contended that [she] would not have smoked cigarettes and developed cancer but for all defendants'—including Reynolds'—deceptive trade practices."). Here, Guerra's motion for reconsideration is repetitive of her first motion for leave to file a second amended complaint but tailored to address the reliance-like concerns discussed by Magistrate Judge Baldwin and the Court. Guerra bases her motion on an attenuated and extended theory from *R.J. Reynolds* that reliance is no longer a consideration in terms of NDTPA standing, but then argues she relied on Dematic's misrepresentation via her job description. ECF No. 167 at 8. "Motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts."

LR 59-1 (b). Because the Court has found there was no change in controlling law, Guerra cannot use the pending motion to repeat arguments from previous pleadings with pre-existing facts that specifically address the Court's previously stated concerns.

For these reasons, the Court denies Guerra's motion for reconsideration. There has been no change in controlling law and no newly discovered evidence. Furthermore, the Court's previous order was not clearly erroneous or manifestly unjust as it discusses identical considerations such as reliance as the Nevada Supreme Court did in *R.J. Reynolds*. Reconsideration is not warranted here.

IT IS THEREFORE ORDERED that Guerra's motion for reconsideration (ECF No. 167) is **DENIED**.

IT IS FURTHER ORDERED that the parties submit their Proposed Joint Pretrial Order no later than **Wednesday, May 31, 2023**, 30-days following the filing of this Order as stipulated and approved by the Court. ECF No. 172.

IT IS SO ORDERED.

DATED this 1st day of May, 2023.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE